David B. Cetron [DC0919]
LAW OFFICE OF DAVID B. CETRON, P.C.
49 West 37th Street, 7th Floor
New York, New York 10018
212-616-3833

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- X
NICOLE LARMOND,                                                       :
                                                                      :
                              Plaintiff,                              :
                                                                      :
            -against-                                                 :
                                                                      :
CITY OF NEW YORK, CORRECTION OFFICER                                  :
MARIA SOTO, CORRECTION OFFICER                                        :
KIMBERELY POLLACK, CORRECTION CAPTAIN                                 :
ABSALON, CORRECTION OFFICER WAITERS,                                  :
CORRECTION OFFICER THOMAS,                                            :
CORRECTION OFFICER GEORGE, and                                        :
CORRECTION OFFICER JANE DOE,                                          :
                              Defendants.                             :
------------------------------------------------------------------- X

   17   CV   3286

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

**ECF CASE**

**PARTIES, JURISDICTION and VENUE**

1.      Plaintiff, NICOLE LARMOND, is a 29 year old female, who, at all times relevant to this action, was a resident of Queens County, New York.

2.      DEFENDANT, CITY OF NEW YORK ("DEFENDANT NYC"), is a municipality within the State of New York, which includes New York County organized and existing under the laws of the State of New York.  DEFENDANT NYC maintains a correction department, the City of New York Department of Correction ("DOC"), which is an agency of the municipality. The DOC operates a correctional facility called Manhattan Detention Complex ("MDC") located in New York County at 125 White Street, New York, NY 10013.  At all times relevant hereto, DEFENDANT NYC, acting through its DOC, was responsible for the policy, practice, supervision, implementation,

and conduct of all correctional matters and for the appointment, training, supervision, and conduct of all DOC personnel. In addition, at all times material herein, DEFENDANT NYC was responsible for ensuring that its personnel obeyed the Constitution and laws of the United States and the State of New York.

3. Upon information and belief, DEFENDANT, CORRECTION OFFICER MARIA SOTO, ("DEFENDANT SOTO") was at all relevant times an officer with the City of New York DOC working at the MDC located in New York County. All actions by DEFENDANT SOTO complained of herein were taken in the course of her employment and under color of law. DEFENDANT SOTO is being sued in both her individual and official capacities.

4. Upon information and belief, DEFENDANT, CORRECTION OFFICER KIMBERELY POLLACK, ("DEFENDANT POLLACK") was at all relevant times an officer with the City of New York DOC working at the MDC located in New York County. All actions by DEFENDANT POLLACK complained of herein were taken in the course of her employment and under color of law. DEFENDANT POLLACK is being sued in both her individual and official capacities.

5. Upon information and belief, DEFENDANT, CAPTAIN ABSALON, ("DEFENDANT ABSALON") was at all relevant times a captain with the City of New York DOC working at the MDC located in New York County. All actions by DEFENDANT ABSALON complained of herein were taken in the course of her employment and under color of law. DEFENDANT ABSALON is being sued in both her individual and official capacities. DEFENDANT ABSALON'S first name is currently unknown.

6. Upon information and belief, DEFENDANT, CORRECTION OFFICER WAITERS, ("DEFENDANT WAITERS") was at all relevant times a correction officer with the City of New York DOC working at the MDC located in New York County. All actions by DEFENDANT WAITERS complained of herein were taken in the course of her employment and under color of law. DEFENDANT WAITERS is being sued in both her individual and official capacities. DEFENDANT WAITERS'S first name is currently unknown.

7. Upon information and belief, DEFENDANT, CORRECTION OFFICER THOMAS, ("DEFENDANT THOMAS") was at all relevant times a correction officer with the City of New York DOC working at the MDC located in New York County. All actions by DEFENDANT THOMAS complained of herein were taken in the course of her employment and under color of law. DEFENDANT THOMAS is being sued in both her individual and official capacities. DEFENDANT THOMAS'S first name is currently unknown.

8. Upon information and belief, DEFENDANT, CORRECTION OFFICER GEORGE, ("DEFENDANT GEORGE") was at all relevant times a correction officer with the City of New York DOC working at the MDC located in New York County. All actions by DEFENDANT GEORGE complained of herein were taken in the course of her employment and under color of law. DEFENDANT GEORGE is being sued in both her individual and official capacities. DEFENDANT GEORGE'S first name is currently unknown.

9. Upon information and belief, DEFENDANT, CORRECTION OFFICER JANE DOE, ("DEFENDANT DOE") was at all relevant times a correction officer with the

City of New York DOC working at the MDC located in New York County. All actions by DEFENDANT DOE complained of herein were taken in the course of her employment and under color of law. DEFENDANT DOE being sued in both her individual and official capacities. Plaintiff is unable to determine the names of this Defendant at this time, so she is sued under a fictitious designation.

10. Original jurisdiction of this Court is founded upon 28 U.S.C. §1331, et seq., specifically 28 U.S.C. § 1343 as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

11. Venue is properly laid in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the action occurred in this district.

12. A Notice of Claim was timely served upon DEFENDANT NYC on November 8, 2016, within ninety days of August 27, 2015 and September 1, 2016, the statutory date of accrual for the State claims herein. Timely notice was otherwise provided for the other claim.

13. The instant action is commenced within one year and ninety days of the date of accrual of all causes of action.

## FACTS GIVING RISE TO THE CLAIMS

**February 2016**

14. In or around mid-February, 2016, Ms. Larmond and her (at that time) four your old daughter went to the Manhattan Detention Complex ("MDC"), a detention facility of the City of New York Department of Correction to visit an inmate

15. Ms. Larmond and her daughter walked without incident through a metal

detector in the MDC.  The metal detector made no indication of any sort.

16.   Ms. Larmond and her daughter were also inspected by a K-9 police dog for contraband.  The K-9 did not indicate anything.

17.   At that time Ms. Larmond was informed that she had been randomly selected for a "pat and frisk" search.  She was informed that if she refused to submit to the search, she would not be permitted to visit the inmate.

18.   Ms. Larmond and her daughter were taken to a room at which time DEFENDANT GEORGE and DEFENDANT THOMAS were present.

19.   DEFENDANT GEORGE, in the presence of DEFENDANT THOMAS, conducted a physical search of Ms. Larmond.

20.   While wearing gloves, DEFENDANT GEORGE, directed Ms. Larmond to lift up her shirt, exposing her bra, at which time DEFENDANT GEORGE touched Ms. Larmond's breast and ran her hands under and around Ms. Larmond's bra.

21.   DEFENDANT GEORGE then directed Ms. Larmond to pull down her pants and bend over.

22.   With her pants down and bent over, Ms. Larmond was then ordered by DEFENDANT GEORGE to "pop your panties" at which time, Ms. Larmond grasped her under garment, pulling it to the side at which time DEFENDANT GEORGE conducted a visual inspection of Ms. Larmond's vagina and anus area.

23.   DEFENDANT GEORGE and DEFENDANT THOMAS directed Ms. Larmond to dress return to the security area after which Ms. Larmond and her daughter were permitted to proceed upstairs to the visiting room.

24.   On May 6, 2016, Ms. Larmond filed a complaint and notified DEFENDANT

NYC of the illegal search via the "3-1-1 Call Center" and received a confirmation from "Constituent Services constituentservices@doc.nyc.gov" regarding " City of New York – CRM correspondence number" 1-1-1246573195" indicating that "[t]he New York City Department of Correction received your . . . correspondence. The details of your correspondence have been forwarded to the appropriate unit."

**August 27, 2016**

25. On August 27, 2016, at approximately 1:00 p.m., Ms. Larmond went to the Manhattan Detention Complex ("MDC"), to visit an inmate

26. Ms. Larmond walked without incident through a metal detector in the MDC. The metal detector made no indication of any sort.

27. Ms. Larmond was also inspected by a K-9 police dog for contraband. The K-9 did not indicate anything.

28. Despite this, Ms. Larmond was pointed out by a corrections officer for an extra "pat and frisk" search.

29. Ms. Larmond was taken to a room at which time DEFENDANT THOMAS, DEFENDANT WAITERS and DEFENDANT DOE were present.

30. DEFENDANT THOMAS directed Ms. Larmond to expose her underwear and buttocks. Thereafter, she was directed to lift up her shirt and unhook her bra and place it on top of her chest, exposing her breasts to the officers. DEFENDANT THOMAS touched Ms. Larmond's breast and ran her hands around Ms. Larmond's exposed breasts. Ms. Larmond was then directed to shake her breast.

31. DEFENDANTS THOMAS, WAITERS and DOE directed Ms. Larmond to dress and return to the security area after which Ms. Larmond was permitted to proceed

upstairs to the visiting room.

**September 1, 2016**

32. On September 1, 2016, at approximately 6:00 p.m., Ms. Larmond and her (at that time) four your old daughter went to the Manhattan Detention Complex ("MDC"), to visit an inmate

33. Ms. Larmond and her daughter walked without incident through a metal detector in the MDC. The metal detector made no indication of any sort.

34. Ms. Larmond and her daughter were also inspected by a K-9 police dog for contraband. The K-9 did not indicate anything.

35. At that time a correction officer informed Ms. Larmond that she had been selected for a "pat and frisk" search.

36. Ms. Larmond and her daughter were taken to a room at which time DEFENDANTS SOTO, POLLACK, THOMAS, GEORGE, and DOE, were present.

37. DEFENDANT THOMAS, in the presence of the other Defendants, conducted a physical search of Ms. Larmond.

38. DEFENDANT GEORGE directed Ms. Larmond to lift up her shirt and unhook her bra, exposing her breasts, at which time DEFENDANT THOMAS directed Ms. Larmond to place her bra on top of her breasts and DEFENDANT THOMAS then touched, lifted and ran her hands under and around Ms. Larmond's breasts.

39. DEFENDANT GEORGE then directed Ms. Larmond to pull down her pants and bend over exposing her buttocks and private areas.

40. With her pants down and bent over, Ms. Larmond was then directed by DEFENDANT GEORGE to pull her underwear aside stating "pop your panties" at which

7

time Ms. Larmond grasped her under garment, i.e. thong style underwear, pulling it to the side exposing her vagina and anus area.   DEFENDANT THOMAS then physically grasped one side of Ms. Larmond's buttocks with her hand, pulling it to the side, and conducted a visual inspection of the areas.

41.     Thereafter, DEFENDANT GEORGE ordered Ms. Larmond to "squat". With her underwear remaining pulled aside, Ms. Larmond complied, by bending her knees and lowering her buttocks toward the floor at which time DEFENDANT THOMAS conducted a further visual inspection of Ms. Larmond's vagina and anus area.

42.     DEFENDANT GEORGE did this in the presence DEFENDANTS SOTO, POLLACK, THOMAS, and DOE and in full view of Ms. Larmond's daughter.

43.     After completing this search of Ms. Larmond, one of the Defendants conducted a physical search of Ms. Larmond's four year old daughter.  This search involved using their hands to open the child's pants, underwear and "pull up", touching the child's buttocks and vaginal area and conducting a visual inspection of these private areas.

44.     DEFENDANT GEORGE and THOMAS directed Ms. Larmond to dress, return to the security area where Ms. Larmond and her daughter remained for approximately 2 hours after which they were only permitted to have a "booth" visit rather than a "contact" visit.

45.     Prior to this invasive search of Ms. Larmond, DEFENDANT ABSALON was informed of the search to be conducted and signed the "Correction Department City of New York Search Consent Report" as the "Supervisory Officer".   During the strip search of Ms. Larmond, DEFENDANT ABSALON remained present in an adjoining

room, believed to be her office.

46. Following this illegal search, Ms. Larmond reported to DEFENDANT ABSALON the specific details of this search but DEFENDANT ABSALON took no action.

47. On September 2, 2016, Ms. Larmond filed a complaint regarding the illegal searches of August 27 and September 1 by notifying the DEFENDANT NYC via the "3-1-1 Call Center" and received a confirmation from DEFENDANT NYC (Reply@customerservice.nyc.gov) indicating service request number" 1-1-1299737951" and further indicating "[t]hank you for contacting the City of New York. Your message has been forwarded to the appropriate agency for review and handling."

48. Furthermore, Ms. Larmond filed a complaint with the NYC DOC Board of Corrections, receiving confirmation number 2016-2440 and was informed that the complaint would be forwarded to DOC Investigations.

49. The Defendants searches of Ms. Larmond constituted an egregious violation of the DOC's Inmate Visit Procedures Directive regarding visitor searches.

50. Section IV(B)(2) of the Directive states that each visitor shall be subject to an electronic search involving a walk-through metal detector. Section IV(C) establishes that, if a visitor has been checked with a metal detector and staff reasonably believes further inspection is necessary to preclude the introduction of contraband (i.e., the triggering of the metal detector, a suspicious bulge in the visitor's clothing, confidential information, or visitor's documented history of attempting to bring in contraband), the staff member shall immediately notify the area supervisor, who shall evaluate the situation to determine if further inspection for contraband is warranted. If the area

supervisor determines that further inspection is warranted, he/she shall notify the Commanding Officer (or his/her designee) and, if given approval by the Commanding Officer, shall give the visitor a Search Consent Report form explaining the reason for the pat frisk and the pat-frisk process.

51. The DOC Directive establishes that the pat-frisk search should be conducted by patting the outer clothing over the entire length of the visitor's body.

52. The DOC Directive makes it clear that the visitor's "skin shall be touched only at the shirt-sleeves and collar."

53. The DOC Directive also requires that, in conducting a search, "officers shall strive to preserve the dignity of the visitor being searched."

54. Strip searches of visitors are not authorized by this or any other directive.

55. The Defendants' conduct, essentially constituting an unlawful sexual assault of Ms. Larmond in front of her four year old daughter, completely degraded and humiliated Ms. Larmond.

56. This illegal and egregious search of Ms. Larmond occurred notwithstanding the knowledge of the DEFENDANT NYC, that numerous others had been subjected to this illegal search by employees of the DOC. DEFENDANT NYC was aware of this conduct and yet took no action to end this illegal practice.

57. The DEFENDANT NYC'S knowledge of these illegal searches is evidence by the numerous actions filed against DEFENDANT NYC, the Department of Corrections Commissioner and other Corrections officers employed by DEFENDANT NYC and its agencies prior to February 2016, the date upon which Ms. Larmond was first subjected to this illegal search.

58. These actions include *Butt v. Officer Capers*, et al., 15-CV-5758 (S.D.N.Y.), *Grottano v. Corrections Officer Capers*, 15-CV-5803 (EDNY)(filed 10/8/15), *A.R. v. City of New York, et al,* 15-CV-9242 (SDNY)(filed 11/23/15).

59. Additionally, the class action complaint, *Grottano, N.D. and A.R. v. City of New York, et al*, 15-CV-9242 (SDNY) encompassing the aforementioned complaints of Grottano and A.R. and other individuals illegally searched, was filed on December 17, 2015.

60. There are also several media reports about visitor strip searches, which indicate that four other women filed notices of claim against the City because they were illegally strip and/or body cavity searched while visiting a DOC facility.[1] These media reports all occurred prior to any of the strip searches of Ms. Larmond.

61. Each of the above referenced actions contained allegations of illegal and invasive strip searches conducted upon visitors to DOC facilities that were very similar in manner and procedure to that employed against Ms. Larmond.

62. Thus, as a result of the filing of each of these actions, DEFENDANT CITY OF NEW YORK was aware that visitors to DOC facilities were being subjected to illegal strip searches but took no action, implicitly consenting to and supporting the utilization of the illegal searches by its employees evidenced by the passage of months between the filing of these actions and the illegal search of Ms. Larmond.

---

1  *See* http://www.nbcnewyork.com/investigations/Strip-Search-Rikers-Island-New-York-Investigation-Police-Women-Correction-Officer-Wallace-362438221.html; http://www.nbcnewyork.com/investigations/NYC-Wife-Says-She-Was-Strip-Searched-Visiting-Rikers-Prison-352413251; html; http://nypost.com/2015/11/19/rikers-guards-stripped-me-naked-and-grabbed-my-giant-fake-breasts/.

63. Upon information and belief, in the instant and other referenced matters, no contraband was recovered despite claims of K-9 alerts.

### AS AND FOR A FIRST CAUSE OF ACTION
(Claims pursuant to 42 U.S.C. § 1983 for Violation of the
Fourth and Fourteenth Amendment to the United States Constitution)

64. Pursuant to Rule 10(c), Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 63 of the Complaint as if incorporated and reiterated herein.

65. Defendants' conduct constituted an unlawful touching of Ms. Larmond.

66. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice, and/or custom pursuant to which Plaintiff was or will be strip and/or body cavity searched absent the requisite particularized reasonable suspicion and/or probable cause, Defendants have deprived and will continue to deprive the Plaintiff of rights, remedies, privileges, and immunities guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution— including the right to bodily integrity and the right against unreasonable searches— conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

67. Defendants acted under pretense and color of state law in their individual and official capacities and within the scope of their employment. Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs and the class of their rights secured by the Fourth and Fourteenth Amendment to the United States Constitution.

68. All acts by the individual Defendants were carried out with the full

knowledge, consent, and cooperation of the City of New York. DEFENDANT NYC, by its policymaking agents, authorized and ratified the individual Defendants' wrongful acts, failed to prevent or stop those acts, and/or allowed or encouraged those acts to continue. The actions of the individual Defendants resulted from and were in accordance with a de facto policy and/or well settled and widespread practice, policy, and/or custom of DEFENDANT NYC.

69. As a direct and proximate result of the misconduct and abuse of authority detailed above, Ms. Larmond suffered and continues to suffer psychological pain, humiliation, apprehension and mental anguish.

## AS AND FOR A SECOND CAUSE OF ACTION
(Claims pursuant to the New York State Constitution, Article 1, § 12)

70. Pursuant to Rule 10(c), Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 69 of the Complaint as if incorporated and reiterated herein.

71. By implementing, promulgating, and continuing to enforce and effectuate a policy, practice, and/or custom pursuant to which the Plaintiff was or will be strip and/or body cavity searched without the requisite reasonable suspicion and/or probable cause, and/or by failing to adequately train, investigate, discipline, and/or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with their employees because the need to act is so obvious and the inadequacy of the current practice is so likely to result in a deprivation of rights, Defendants have deprived and will continue to deprive the Plaintiff of rights, remedies, privileges, and immunities guaranteed by the New York State Constitution,

Article 1, § 12.

72. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff has suffered and continues to suffer psychological pain, humiliation, apprehension and mental anguish.

### DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

**WHEREFORE**, the Plaintiff demands judgment against Defendants as follows:

   i) On the first claim, compensatory damages in an amount to be determined at trial plus prejudgment interest;

   ii) On the second claim, compensatory damages in an amount to be determined at trial plus prejudgment interest;

   III) Statutory attorney's fees, costs and disbursements pursuant to 28 U.S.C. §1920 and 42 U.S.C. §1988, and costs of this action; and,

   iv) Such other relief as the Court deems just and proper.

Dated: New York, New York
       May 3, 2017

LAW OFFICE OF DAVID B. CETRON, P.C.
Attorneys for Plaintiff

By: _____
David B. Cetron [DC0919]
49 West 37th Street, 7th Floor
New York, New York 10018
(212) 616-3833